UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**WILLIE SMITH,**

      **Plaintiff,**

**vs.**                                                          **Case No.  3:13-cv-00933-TJC-MCR**

**MARKONE FINANCIAL, LLC,**

      **Defendant.**

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, MARKONE FINANCIAL, LLC (hereinafter "Defendant"), by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Court to enter judgment in Defendant's favor and against Plaintiff on 1) Plaintiff's claim for violation of the Telephone Consumer Protection Act (Count I) and 2) Plaintiff's claim for violation of Florida's Consumer Collection Practices Act (Count II), on the grounds that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  In support of this Motion, Defendant submits its Affidavit previously filed in this cause (Doc. 23) (hereafter referred to as "Defendant's Affidavit"), the Affidavit of Ryan Johnson, as well as excerpts from the transcripts of the depositions of the Plaintiff and Defendant's corporate representative(s) referenced herein; copies of which are attached hereto and incorporated herein by reference.  The grounds supporting this Motion are more fully set forth below.

## UNDISPUTED MATERIAL FACTS

1.      Plaintiff sues Defendant in a two count Complaint alleging violation of the Telephone Consumer Protection Act (Count I), and violation of Florida's Consumer Collection Practices Act (Count II).

2.      Plaintiff contends that Plaintiff received calls from Defendant, and that all of the calls were to Plaintiff's cell phone with the telephone number 407-558-4431. (Plaintiff's Complaint, Doc. 1; Excerpts of Willie Smith Deposition, attached hereto as Exhibit A, hereafter referred to as "Deposition of Willie Smith," p.25, line 23 through p.26, line 11).

3.      Defendant is an indirect auto finance company that purchases retail instalment sales contracts entered into between auto dealerships and the dealerships' customers.  (Affidavit of Ryan Johnson, attached hereto as Exhibit B; Excerpts of Video Deposition of Ryan Johnson, attached hereto as Exhibit C, hereafter referred to as "Deposition of Ryan Johnson," p.44, line 20 through p.45, line 21).  Defendant financed customer Kimberly Robinson's purchase of an automobile.

4.      The relevant account at issue in this case is the account of Kimberly Robinson.  (Deposition of Ryan Johnson, p.25, lines 10 and 11).

5.      Kimberly Robinson is Plaintiff's daughter.  (Deposition of Willie Smith, p.5, lines 6 through 22).

6.      Kimberly Robinson used Plaintiff as a reference in connection with her vehicle purchase, and Ms. Robinson specifically authorized Defendant to call Plaintiff in

connection therewith.  (Affidavit of Ryan Johnson; Deposition of Ryan Johnson, p.28, lines 13 through 19).

7.      Plaintiff is specifically referenced on a Verification Sheet, Customer Interview and Residence Verification.  (Affidavit of Ryan Johnson; Deposition of Ryan Johnson, p.42, line 7 through p.50, line 17; Exhibit 5 to Deposition of Ryan Johnson, attached hereto as Exhibit D).

8.      The Verification Sheet, bates stamped DEF001 and attached as Exhibit 1 to the Affidavit of Ryan Johnson shows that Defendant called Plaintiff, Kimberly Robinson's mother, at phone number 407-558-4431; and verified that Kimberly Robinson, Plaintiff's tenant, lived at 315 Wilner Circle, Sanford, Florida.  (Affidavit of Ryan Johnson; Deposition of Ryan Johnson, p.45, line 22 through p.47, line 15; Exhibit 5 to Deposition of Ryan Johnson).

9.      The Customer Interview sheet, bates stamped DEF002 and attached as Exhibit 2 to the Affidavit of Ryan Johnson indicates the same aforementioned residential address for Kimberly Robinson and that Plaintiff is Kimberly Robinson's landlord and mother with phone number 407-558-4431.  (Affidavit of Ryan Johnson; Deposition of Ryan Johnson, p.47, line 16 through p.49, line 17; Exhibit 5 to Deposition of Ryan Johnson).

10.      The Reference Verification sheet, bates stamped DEF003 and attached as Exhibit 3 to the Affidavit of Ryan Johnson specifically identifies Plaintiff as Kimberly Robinson's landlord, and separately as Kimberly Robinson's mother, at the same aforementioned residential address and phone number.  (Affidavit of Ryan Johnson;

Deposition of Ryan Johnson, p.49, line 18 though p.50, line 10; Exhibit 5 to Deposition of Ryan Johnson).

11.   The Reference Verification sheet further states that in the event of default or other need to make contact with customer during the term of the account being open with Defendant, references may be called.  (Affidavit of Ryan Johnson; Exhibit 5 to Deposition of Ryan Johnson).

12.   In accordance with the foregoing, Defendant made telephone calls to telephone number 407-558-4431.  (Affidavit of Ryan Johnson; Defendant's Amended Responses to Plaintiff's First Set of Interrogatories to Defendant, attached hereto as Exhibit E).

13.    Plaintiff herself also initiated telephone calls to Defendant from telephone number 407-558-4431.  (Affidavit of Ryan Johnson).

14.    Plaintiff herself admits that she doesn't owe Defendant any money, and has never owed Defendant any money; that she is not obligated to pay Defendant any money, and has never been obligated to pay Defendant any money; that she is not obligated to pay Defendant any debt, and has never been obligated to pay Defendant any debt; that Defendant has never told her that she owed it any money; that Defendant has never told her that she was obligated to pay Defendant any money; that Defendant never told her that she was obligated to pay Defendant any debt; that Defendant never claimed that she owed Defendant any money; that Defendant never claimed that she was obligated to pay Defendant any money; and that Defendant never claimed that she was obligated to pay Defendant any debt. (Deposition of Willie Smith, p.22, line 8 through p.24, line 9).

15.     Indeed, Plaintiff is not and never has been a debtor of Defendant, and is not and never has been obligated or allegedly obligated to pay Defendant any money. (Defendant's Affidavit, Doc.23).

16.     Defendant has further never communicated to the Plaintiff that she was obligated or allegedly obligated to pay Defendant.  (Defendant's Affidavit, Doc.23).

17.     Defendant's account notes for the account of Kimberly Robinson are the account notes that collectors would document their collection activity and telephone calls made on the account of Kimberly Robinson (hereinafter "Defendant's Account Notes"). (Affidavit of Ryan Johnson; Deposition of Ryan Johnson, p.33, line 24 through p.34, line 3).

18.     According to the Plaintiff, when Defendant spoke with Plaintiff the caller identified their name, where they were calling from and who they were looking for; and would not say anything else.  (Deposition of Willie Smith, p.25, lines 15 through 21).

19.     Plaintiff further testified at deposition that Defendant was calling Plaintiff to try and locate Kimberly.  (Deposition of Willie Smith, p.108, line 22 through p.109, line 1).

20.     On January 12, 2013, Defendant spoke with Plaintiff at telephone number 407-558-4431.  Plaintiff verified that her daughter, Kimberly Robinson, lived with Plaintiff at 315 Willner and said her daughter is not home and will give her the message.  (Affidavit of Ryan Johnson).

21.     On February 13, 2013, Defendant spoke with Plaintiff at telephone number 407-558-4431.  During this conversation, Plaintiff again said that Kimberly Robinson lived with Plaintiff at 315 Willner Circle.  (Affidavit of Ryan Johnson; Deposition of Ryan

Johnson, p.70, line 20 through p.72, line 5; Excerpts of Deposition of Nicole Bailey, attached hereto as Exhibit F, hereinafter referred to as "Deposition of Nicole Bailey," p.24, line 21 through p.25, line 8).

22.     Also during this February 13, 2013 telephone conversation, Defendant asked Plaintiff for a telephone number to reach the Plaintiff's daughter and Plaintiff said that her number 407-558-4431 was a good number to reach her.  (Affidavit of Ryan Johnson; Deposition of Ryan Johnson, p.70, line 20 through p.73, line 4; Deposition of Nicole Bailey, p.24, line 21 through p.25, line 21).

23.     When asked about this telephone conversation at deposition, Plaintiff did not deny the statement she made which was recorded in the notes taken by Defendant at the time, that is, that Plaintiff's telephone number was a good number to reach her daughter Kimberly Robinson.   Plaintiff testified on direct and redirect examination that she could not remember one way or the other whether she made that statement. (Deposition of Willie Smith, p.41, line 25 through p.42, line 12; p.109, lines 20 through p.110, line 9; p.110, line 24 though p.111, line 10).

24.     Defendant's first telephone call to telephone number 407-558-4431 via LiveVox Predictive Dialer occurred thereafter, specifically on March 14, 2013.  (Affidavit of Ryan Johnson; Defendant's Amended Responses to Plaintiff's First Set of Interrogatories to Defendant).

25.     Defendant's last telephone call to telephone number 407-558-4431 via LiveVox Predictive Dialer occurred on April 2, 2013.   (Affidavit of Ryan Johnson; Defendant's Amended Responses to Plaintiff's First Set of Interrogatories to Defendant).

26.     In accordance with the foregoing, Defendant placed a total of 53 calls to telephone number 407-558-4431, with the first call being made on November 7, 2012 and the last call being made on June 14, 2013.   No more than three calls were made to telephone number 407-558-4431 on any given day.   (Affidavit of Ryan Johnson; Defendant's Amended Responses to Plaintiff's First Set of Interrogatories to Defendant). These phone calls equate to an average of approximately 7 phone calls per month.

## MEMORANDUM OF LAW

I.     **PLAINTIFF IS NOT A "DEBTOR" ENTITLED TO SUE FOR VIOLATION OF FLORIDA'S CONSUMER COLLECTION PRACTICES ACT[1]**

Section 559.77, *Florida Statutes*, of the FCCPA provides:

**559.77        Civil remedies.-**
(1)     A *debtor* may bring a civil action against a person violating the provisions of s.559.72 in the county in which the alleged violator resides or has his or her principal place of business or in the county where the alleged violation occurred.

(emphasis added).   In other words, the FCCPA's civil remedies provision only gives a "debtor" the right to bring a civil action for violation of the FCCPA.   The FCCPA defines a "[d]ebtor" as any natural person obligated or allegedly obligated to pay any debt.   Section 559.55(2), *Florida Statutes*.   In this case, the undisputed evidence shows that Plaintiff is not a requisite "debtor" obligated or allegedly obligated to pay Defendant any debt.

---

[1] It is notable that in its Order adopting October 23, 2013 Report and Recommendation, this Court stated that Defendant may file a more complete motion for summary judgment on this issue following the close of discovery, even if it asserts the same legal grounds set forth in Defendant's previously filed Motion for Judgment on the Pleadings (Doc. 37).

Plaintiff herself admits that she doesn't owe Defendant any money, and has never owed Defendant any money; that she is not obligated to pay Defendant any money, and has never been obligated to pay Defendant any money; that she is not obligated to pay Defendant any debt, and has never been obligated to pay Defendant any debt; that Defendant has never told her that she owed it any money; that Defendant never told her that she was obligated to pay Defendant any money; that Defendant never told her that she was obligated to pay Defendant any debt; that Defendant never claimed that she owed Defendant any money; that Defendant never claimed that she was obligated to pay Defendant any money; and that Defendant never claimed that she was obligated to pay Defendant any debt. (Deposition of Willie Smith, p.22, line 8 through p.24, line 9). Indeed, Plaintiff is not and never has been a debtor of Defendant, and is not and never has been obligated or allegedly obligated to pay Defendant any money. (Defendant's Affidavit, Doc.23). In short, it is undisputed that Defendant never communicated to the Plaintiff that she was obligated or allegedly obligated to pay Defendant. (Defendant's Affidavit, Doc.23).

The question for determining whether Plaintiff is "allegedly obligated" to pay the debt is just this, that is, whether Defendant communicated to the called party that she was obligated. *Fini v. Dish Network L.L.C.*, 955 F.Supp.2d 1288, 1298 (M.D. Fla. 2013). In *Fini*, the Court specifically held:

> Defendant essentially argues that Plaintiff could not have been "allegedly obligated" to pay the debt where neither [p]laintiff nor [d]efendant actually thought [p]laintiff was so obligated. However, the question is not whether [d]efendant thought [plaintiff], the individual, was obligated to pay the debt; rather, *it is whether [d]efendant communicated to the called party that she was obligated.*

(emphasis added).  Even Plaintiff herself admits that *Fini* was rendered "on the precise issue…currently before the Court."  (Doc. 24, p.6).  In this case, as the Plaintiff herself admits, it is undisputed that Defendant never communicated to the Plaintiff that she was obligated to pay Defendant.[2]  Therefore Plaintiff is not a "debtor" entitled to bring an action for violation of the FCCPA.  *Fini.*

While the *Fini* court concluded that the plaintiff was allegedly obligated to pay a debt and therefore had standing under the FCCPA, it is notable that the facts of *Fini* are distinguishable from the facts of this case.  *Fini* concerned a series of calls by the defendant to the plaintiff concerning the debt of a third person with whom the plaintiff had no relationship.  The plaintiff in *Fini* asserted that she was "allegedly obligated" to pay a debt under the statute because the defendant's prerecorded calls requested that she pay defendant or else her satellite television service would be discontinued.  *Id.*  The plaintiff in *Fini* specifically produced the text of a voicemail she received which stated, in part:

> This is an important message from Dish Network, *your satellite TV provider*. We have made several attempts to contact *you regarding the payment of your account balance*.  This is a final notification regarding *your outstanding account balance* prior to service interruption.  To continue *your monthly services* and avoid collection of early termination fees, *please pay the total amount due…immediately* by logging into dish.com or call 1-866-263-1911. *Thank you for being a valued Dish Network Customer.*

---

[2] Plaintiff apparently contends that, notwithstanding all of the foregoing, Defendant made her *feel* like it was her obligation.  (Deposition of Willie Smith, p.23, line 1 though line 19; p.47, lines 8 through 10; p.63, lines 24 through p.64, line 2).  However, as set forth above, the question is not how the Plaintiff subjectively felt, but whether Defendant communicated to the Plaintiff that she was obligated.  *Fini.*  And the undisputed evidence shows that Defendant never did so.

*Id.* at 2 (emphasis added).  These facts --- specifically including the fact that the defendant made debt collection calls to the wrong person, and the fact that the voicemail the plaintiff received stated it was from plaintiff's provider, regarding the payment of plaintiff's account balance/outstanding account balance, regarding plaintiff's monthly services, asking that plaintiff please pay the total amount due immediately, and thanking plaintiff for being a valued customer --- all show that the defendant communicated to the plaintiff that she was obligated.  However, no such facts or evidence exists in this case.  The instant case is not a case of mistaken identity where calls were made to the Plaintiff concerning the debt of someone with whom the Plaintiff had no relationship or where the Defendant otherwise communicated to the Plaintiff that she was obligated.  Indeed in this case it is undisputed that Defendant never communicated to the Plaintiff that she was obligated.

Two other cases previously cited by Plaintiff in this case are also distinguishable from the facts of this case, specifically *Desmond v. Accounts Receivable Management*, 72 So.3d 179 (Fla. 2d DCA 2011) and an unreported decision in *Campanale v. Capital One Services, LLC*, Case No. 8:11-cv-2490-T35-EAJ.

In *Desmond*, the original creditor confused its customer "Edward A. Desmond, Jr." with the plaintiff "Edward S. Desmond" who did not have an account with the creditor, and "mistakenly made a large number of debt collection telephone calls to [plaintiff]."  *Id.* at 180.  The account was then referred to the defendant, which also "began making debt collection calls to the wrong Mr. Desmond."  *Id.*  The defendant made a minimum of eighteen calls to Mr. Desmond, leaving recorded messages on his answering machine each time it called.  *Id.*  The messages would inform Mr. Desmond "that the call was in

regard to an important matter and that *he should return the call."* *Id.* (emphasis added).
Each time Mr. Desmond called the return number, a prerecorded message allegedly
informed him that he must provide *his credit card number* to proceed further. *Id.* Because
it was a case of mistaken identity, Mr. Desmond had no credit card number to provide.
Mr. Desmond claimed that neither the phone messages nor the electronic phone system
into which he dialed gave him information about how he might contact the defendant to
explain that its representatives were calling the wrong person. These facts --- specifically
including the fact that the defendant made debt collection calls to the wrong Mr. Desmond,
that the recorded messages for Mr. Desmond would inform him that he should return the
call, and that the defendant informed him in prerecorded messages that he must provide
his credit card number --- all show that the defendant communicated to the plaintiff that
he was obligated. Once again, no such facts or evidence exists in this case. Again this
case is not a case of mistaken identity where "debt collection calls" were made to the
"wrong" person or where the Defendant otherwise communicated to the Plaintiff that she
was obligated. Again it is undisputed that Defendant never communicated to the Plaintiff
that she was obligated.

   *Campanale* merely decided a motion to dismiss for failure to state a claim before
the facts were established via discovery, where the court accordingly had to accept as
true the plaintiff's allegations that the defendant called the plaintiff "in an attempt to collect
the debt from plaintiff" which caused her to "believe" --- *not subjectively feel* --- that she
owed the debt and had to choose between paying "the wrongfully asserted debt" and
continuing to receive the "defendant's misdirected communications." Once again, these

facts are distinguishable from the facts of this case. Here in this case, unlike *Campanale*, the undisputed evidence shows that there were no attempts to collect the subject debt from Plaintiff. The undisputed evidence in this case also shows that the Plaintiff did not "believe" that she owed the debt and had to choose between paying "the wrongfully asserted debt" and continuing to receive "misdirected communications." Quite to the contrary, Defendant never communicated to the Plaintiff that she was obligated.

Another case previously referenced in this action, *Halsten v. Target National Bank,* 2013 WL 3804844 (M.D. Fla. 2013), also notes *Fini's* finding that "the question...is whether [d]efendant communicated to the called party that she was obligated." *Halsten* at *4. *Halsten*, however, is also factually distinguishable from the instant case. Like *Campanale*, *Halsten* simply decided a motion to dismiss for failure to state a claim where the court, again, had to accept as true the plaintiff's allegations that the defendants made continuous calls to the plaintiff "in an attempt to collect an outstanding balance" on a Target REDcard, that the plaintiff never had a Target REDcard and implied that plaintiff was responsible for the debt. This case, however, does not involve continuous calls to Plaintiff "in an attempt to collect an outstanding balance" or any implication that Plaintiff was responsible for the debt. Once again, Defendant never communicated to Plaintiff that she was obligated.

For these reasons, Plaintiff is not a "debtor" "allegedly obligated" to pay Defendant any debt who may bring an action for violation of the FCCPA; is not entitled to sue under the FCCPA; and lacks standing to sue under the FCCPA. *Fini v. Dish Network, L.L.C.,* 2013 WL 3815627 (M.D. Fla. 2013); *Sylvester v. GE Capital Retail Bank*, 2012 WL

3522691 (M.D. Fla. 2012); *Condon v. Global Credit & Collection Corporation*, 2010 WL

5071014 (M.D. Fla. 2010) (FCCPA claim is not actionable where the plaintiff is not alleged

to owe any debt to the defendant); *Belin v. Litton Loan Servicing, LP*, 2006 WL 1992410

(M.D. Fla. 2006) ("[s]ince [certain plaintiffs] are not alleged to be obligated to pay the loan,

they are not debtors under the FCCPA, and they do not have standing to pursue claims

for violations of the FCCPA"). Defendant is accordingly entitled to the entry of judgment

in Defendant's favor and against Plaintiff on Plaintiff's claims for violation of the FCCPA.[3]

## II.   DEFENDANT IS ENTITLED TO JUDGMENT ON PLAINTIFF'S TCPA CLAIMS BASED ON PRIOR EXPRESS CONSENT

47 U.S.C. §227(b)(1)(A)(iii) of the Telephone Consumer Protection Act of 1991

("TCPA") provides:

> It shall be unlawful for any person with the United States...
>
> (A)      to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system...
>
> (iii)  to any telephone number assigned to a ... cellular telephone service...

The TCPA allows autodialed and prerecorded message calls if the called party expressly

consents to their use.   *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, Report and Order, 7 F.C.C.R. 8752, 8768 ¶ 29, 1992

---

[3] Defendant is specifically entitled to judgment on Plaintiff's claims pursuant to Section 559.72(7) and Section 559.72(9), without distinction.  This is because Section 559.77(1) plainly and expressly provides that only a "debtor" may bring an action for violation of the FCCPA, and Plaintiff is not a requisite "debtor" obligated or allegedly obligated to pay Defendant any debt.  *Fini* ("[t]he Court...concludes that [p]laintiff was *'allegedly obligated' to pay a debt*, and *thereby has standing under the FCCPA*") (emphasis added).

WL 690928 (Oct. 16, 1992) ("1992 FCC Order").  The TCPA does not define "express

consent." *Murphy v. DCI Biologicals Orlando, LLC, DCI*, 2013 WL 6865772, *5 (M.D. Fla.

Dec. 31, 2013).   Congress delegated to the Federal Communications Commission

("FCC") the authority to make rules and regulations to implement the TCPA.  *Id.,* citing to

47 U.S.C. §227(b)(2).  Pursuant to that authority, the FCC stated:

> any telephone subscriber who releases his or her telephone number has, in
> effect, given prior express consent to be called by the entity to which the
> number was released...

> persons who knowingly release their phone numbers have in effect given
> their invitation or permission to be called at the number which they have
> given, absent instructions to the contrary.

1992 FCC Order ¶¶ 30-31.  This Court is bound to apply the FCC's definition of "express

consent" under the 1992 FCC Order.  *Id.* at *8.  Such "express consent" is consent to

received auto-dialed calls.  *Id.*  The 1992 FCC Order is clear that providing a number

constitutes express consent to be auto-dialed under the TCPA.  *Id.*

For instance, in *Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039, *2 (N.D. Ala.

Nov. 9, 2012), the court held that the plaintiff's provision of her number to a Walmart

pharmacy in connection with dropping off a prescription constituted "express consent" to

be called under the TCPA, noting that the 1992 FCC Order interpreted that term "to

encompass a situation where an individual voluntarily divulges her telephone number."

The court considered this to be consistent with the overwhelming weight of social practice

that distributing one's telephone number is an invitation to be called, especially when the

number is given at another's request.  *Id.* at *5.  Similarly, in *Roberts v. PayPal, Inc.*, the

court adopted the reasoning in *Pinkard* and found that the plaintiff "consented to receive

text messages from PayPal simply by providing his cell phone number…," consistent with the 1992 FCC Order. 2013 WL 2384242, *4-*5 (N.D. Cal. May 30, 2013). The *Emanuel v. Los Angeles Lakers, Inc.* court also followed the reasoning in *Pinkard*, and held "distributing one's telephone number in an invitation to be called" when determining that the plaintiff's text message sent during a Lakers basketball game for display on the scoreboard constituted express consent to receiving a text message from the defendant. 2013 WL 1719035, *3-*4 (C.D. Cal. Apr. 18, 2013).

In this case, Defendant spoke with Plaintiff at telephone number 407-558-4431 on February 13, 2013. During this conversation, Defendant asked Plaintiff for a telephone number to reach the Plaintiff's daughter and Plaintiff said that her number 407-558-4431 was a good number to reach her. (Affidavit of Ryan Johnson; Deposition of Ryan Johnson, p.70, line 20 through p.73, line 4; Deposition of Nicole Bailey, p.24, line 21 through p.25, line 21). Defendant's first telephone call to telephone number 407-558-4431 via LiveVox Predictive Dialer occurred thereafter, specifically on March 14, 2013. (Affidavit of Ryan Johnson; Defendant's Amended Responses to Plaintiff's First Set of Interrogatories to Defendant). Defendant's last telephone call to telephone number 407-558-4431 via LiveVox Predictive Dialer occurred on April 2, 2013. (Affidavit of Ryan Johnson; Defendant's Amended Responses to Plaintiff's First Set of Interrogatories to Defendant). In short, Plaintiff released and provided her telephone number to Defendant. Plaintiff's release and provision of her telephone number to Defendant constitutes express consent under the TCPA. *Murphy v. DCI Biologicals Orlando, LLC, DCI*, 2013 WL 6865772, *5 (M.D. Fla. Dec. 31, 2013). Defendant is accordingly entitled to the entry

of judgment in Defendant's favor and against Plaintiff on Plaintiff's claims for violation of the TCPA.

### III.   AUTOMATIC TELEPHONE DIALING SYSTEM

47 U.S.C. §227(b)(1)(A)(iii) of the TCPA again provides:

It shall be unlawful for any person with the United States…

(B) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…

(iii)  to any telephone number assigned to a … cellular telephone service…

47 U.S.C. 227(a)(1) goes on to define the term "automatic telephone dialing system" as follows:

equipment which has the capacity—

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers.

In this case, Plaintiff can offer no evidence showing that Defendant's LiveVox Predictive Dialer used at any relevant time a random or sequential number generator.  As Plaintiff herself notes in a recent filing with this Court (Doc. 60), Defendant has to date denied that its dialer system was an automatic telephone dialing system covered by the TCPA.  Further, Defendant's Motion to Strike Plaintiff's Purported Experts And Other Matters Improperly And Belatedly Disclosed (Doc. 49) has not yet been ruled upon by the Court, and the Court has granted Defendant leave to file a Reply on or before April 8, 2014 to Plaintiff's Response thereto.  Regardless, the only conceivably relevant evidence on this issue is the testimony of Defendant's corporate representative Nikhilesh Nath ---

who Defendant designated to testify regarding Defendant's telephone equipment used to contact the number 407-558-44431 and Plaintiff --- and from whom Plaintiff obtained no testimony stating that Defendant's LiveVox Predictive Dialer used a random or sequential number generator.[4]   Defendant is accordingly entitled to the entry of judgment in Defendant's favor and against Plaintiff on Plaintiff's claims for violation of the TCPA.

## IV.   CLAIM FOR VIOLATION OF SECTION 559.72(7), *FLORIDA STATUTES*

Plaintiff alleges that Defendant violated Section 559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, and by willfully engaging in other conduct which can reasonably be expected to abuse the debtor or any member of her or his family.   In connection with these claims, it is again notable that Plaintiff contends that she received calls from Defendant, that each call was placed to Plaintiff's cell phone and that all of the calls were to Plaintiff's cell phone; and that cell phone has a cellular number of 407-558-4431.   (Plaintiff's Complaint, Doc. 1; Deposition of Willie Smith, p.25, line 23 through p.26, line 11).   Therefore these claims are limited to calls to Plaintiff's alleged cell phone.

Defendant placed a total of 53 calls to telephone number 407-558-4431, with the first call being made on November 7, 2012 and the last call being made on June 14, 2013. (Affidavit of Ryan Johnson; Defendant's Amended Responses to Plaintiff's First Set of Interrogatories to Defendant).   No more than three calls were made to telephone number 407-558-4431 on any given day.   (Affidavit of Ryan Johnson; Defendant's Amended

---

[4] Indeed the words "random" or "sequential" were not even said at Mr. Nath's deposition.

Responses to Plaintiff's First Set of Interrogatories to Defendant). It is notable that these phone calls equate to an average of approximately 7 phone calls per month. Further, several phone calls were also initiated by the Plaintiff herself. (Affidavit of Ryan Johnson).

According to the Plaintiff, when Defendant spoke with Plaintiff the caller identified their name, where they were calling from and who they were looking for; and would not say anything else. (Deposition of Willie Smith, p.25, lines 15 through 21). Plaintiff further testified at deposition that Defendant was calling Plaintiff to try and locate Kimberly. (Deposition of Willie Smith, p.108, line 22 through p.109, line 1).

In applying and construing the civil remedies section of Florida's Consumer Collection Practices Act, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act. Section 559.77(5), *Florida Statutes*. The Fair Debt Collection Practices Act ("FDCPA") notably prohibits engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt; and specifically prohibits causing a telephone to ring or engaging any person in telephone conversation repeatedly and continuously with intent to annoy, abuse, or harass any person at the called number. 15 U.S.C. §1692d, §1692d(5).

A claim based solely on the number of calls is insufficient to raise a cause of action because, as courts in the Eleventh Circuit have generally found, a plaintiff must also show that the creditor engaged in other inappropriate conduct. *Stinson v. Receivables Management Bureau Inc*, 2013 WL 1279866 (N.D. Ala. 2013). A high volume of calls, even daily calls, unaccompanied by other egregious conduct is insufficient to raise a

triable issue of fact for the jury. *Webb v. Premiere Credit of North America*, 2012 WL 5199754 (D. Kan. 2012); *Waite v. Financial Recovery Services, Inc.*, 2010 WL 5209350 (M.D. Fla. 2010). Even where a defendant makes as many as 149 calls within a two month period, or an average of 75 calls per month --- more than ten times the average monthly frequency of phone calls at issue in this case --- the defendant is entitled to summary judgment where the calls are unaccompanied by any other egregious conduct to evince an intent to annoy, abuse or harass. *Carman v. CBE Group, Inc.*, 782 F.Supp.2d 1223 (D. Kan. 2011).

In this case, Plaintiff fails to show that Defendant engaged in other inappropriate or egregious conduct.

Again, no more than three calls were made to telephone number 407-558-4431 on any given day. A defendant is entitled to summary judgment where it calls up to six --- or more --- times per day on consecutive days over a period of months. *Webb*; *Tucker v. CBE Group, Inc.* 710 F.Supp.2d 1301 (M.D. Fla. 2010) (seven calls on any given day does not constitute a violation of the FDCPA as a matter of law); *Pugliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562 (E.D. Mich. 2010) (defendant entitled to summary judgment where defendant made 350 calls over an eight month period and allegedly contacted plaintiffs several times every day); *Waite* (defendant entitled to summary judgment where defendant allegedly made several calls within a single day).

Plaintiff further never sent a requisite written cease and desist letter as required by the FDCPA.[5]  Under the FDCPA, a debt collector shall not communicate further with the consumer --- except under limited circumstances --- after a consumer notifies a debt collector in writing that the consumer wishes the debt collector to cease further communication.  *Saltzman v. I.C. System, Inc.,* 2009 WL 3190359 (E.D. Mich. 2009) addresses this very issue:

> The Court finds no evidence in the record from which a reasonable trier of fact could infer that Defendant acted with the requisite "intent to annoy, abuse, or harass" in making the telephone calls at issue…Although Plaintiff alleges that she requested Defendant to stop calling her, she did not send Defendant a cease and desist letter, dispute the amount owed, or provide evidence that Defendant has acted in a manner that would be actionable as harassment, oppression or abuse.
>
> Plaintiff has failed to point to any specific circumstances surrounding these telephone calls that would show any intent, on the part of Defendant, to harass, annoy or abuse.
>
> …due to Plaintiff's failure to produce evidence demonstrating a genuine issue of material fact, Defendant is entitled to summary judgment in its favor on this claim.

*Saltzman* at 7, 8.  *Pugliese* also addresses this issue.  In *Pugliese*, although the plaintiffs alleged that the defendants continued to call plaintiffs constantly after plaintiffs repeatedly asked defendants to cease, the court specifically noted that the plaintiffs never wrote to defendants asking them to cease calling; and held:

> [d]espite Plaintiffs' extensive evidence documenting the number of calls made, there is no evidence to demonstrate that Defendants acted intentionally to annoy, harass, or abuse them.

---

[5] Plaintiff testified at deposition that she has no such documents.  (Deposition of Willie Smith, p.73, lines 16 through p.74, line 6; p.76, lines 12 through 21; p.78, line 25 through p. 79, line 14).

*Pugliese* at 3, 9.   The *Pugliese* court accordingly granted summary judgment to defendants on plaintiffs' claim brought under Section 1692d of the FDCPA.   *Pugliese* at 10.   In short, although the FDCPA requires that a cease and desist request be made in writing, here it is undisputed that Plaintiff never made any such request.

Finally, it is notable that courts uniformly hold that the entry of summary judgment in favor of the defendant is proper where the frequency of phone calls is notably higher than the alleged frequency of phone calls at issue in this case. *Carman* (149 calls over two months); *Tucker* (57 calls over a twenty day period including seven calls on any given day does not constitute a violation of the FDCPA as a matter of law); *Saltzman* (defendant entitled to summary judgment in its favor on FDCPA claim where defendant makes 60 calls over five week period and where plaintiff fails to point to any specific circumstances surrounding telephone calls that would show any intent to harass, annoy or abuse); *Pugliese* (plaintiffs failed to meet burden of showing that a genuine issue of material fact remains on their FDCPA claims where defendant made 350 calls over an eight month period and contacted plaintiffs several times every day); *Druschel* (14 calls over a two week period also does not give rise --- as a matter of law --- to a violation of the FDCPA).

It is further notable that the case of *Story v. Fields,* 343 So.2d 675 (Fla. 1st DCA 1977) is distinguishable from this case.   In *Story*, the plaintiff was upset about the defendant's failure to repair an air conditioner, and advised the defendant that he intended not to make payments until the air conditioner was repaired; after which the defendant telephoned the plaintiff to demand payment of plaintiff's debt; and the plaintiff finally told the defendant to stop bothering him and to take the matter to court, for he did not intend

to pay.  In short, *Story* involved continued calls to the plaintiff who owed the subject debt, *to demand payment of plaintiff's debt*; after the debtor expressly advised that he did not intend to pay.  In this case, on the other hand, it is undisputed that the Plaintiff does not owe the subject debt and that Defendant never demanded payment from Plaintiff. Therefore *Story* is completely distinguishable, and unpersuasive.[6]

For these reasons, there are no genuine issues of material fact and Defendant is entitled to a judgment in its favor on Plaintiff's claims pursuant to Section 559.72(7) as a matter of law.

## V.   CLAIM FOR VIOLATION OF SECTION 559.72(9), *FLORIDA STATUTES*

Section 559.72(9), *Florida Statutes*, provides that in collecting consumer debts, no person shall:  claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate.  In this case, the undisputed evidence shows that Defendant never claimed, attempted or threatened to enforce a debt against Plaintiff.  Again, Plaintiff herself admits that Defendant has never told her that she owed it any money; that Defendant never told her that she was obligated to pay Defendant any money; that Defendant never told her that she was obligated to pay Defendant any debt; that Defendant never claimed that she owed Defendant any money; that Defendant never claimed that she was obligated to pay Defendant any money; and that Defendant never claimed that she was obligated to pay Defendant any debt.  (Deposition of Willie Smith,

---

[6] *Story* was decided prior to the enactment of the FDCPA, which again requires cease and desist requests to be made in writing.  Here the Plaintiff never made any written cease and desist request and therefore --- as in *Saltzman* and *Pugliese* --- there is simply no evidence that Defendant willfully communicated with the Plaintiff with such frequency as can reasonably be expected to harass.

p.22, line 8 through p.24, line 9).   Indeed, it is undisputed that Defendant never communicated to the Plaintiff that she was obligated or allegedly obligated to pay Defendant.  (Defendant's Affidavit, Doc.23).

For these reasons, there are no genuine issues of material fact and Defendant is entitled to a judgment in its favor on Plaintiff's claims pursuant to Section 559.72(9) as a matter of law.

### VI.   PUNITIVE DAMAGES AND ATTORNEYS' FEES

Plaintiff has only pled entitlement to punitive damages and attorneys' fees in Count I, her TCPA claim, by virtue of a conclusory request in her "WHEREFORE" clause.[7]  She does not allege why she is entitled to punitive damages or attorneys' fees, or under what authority she seeks them.  In fact, the TCPA does not explicitly allow a private claimant to receive punitive damages or attorneys' fees.[8]  47 U.S.C. § 227; *Smith v. Microsoft Corp.,* 2014 WL 323683,*4 (S.D. Cal. Jan. 28, 2014), *quoting,* 137 Cong. Rec. § 16,204 (daily ed. Nov. 7, 1991) (the TCPA does not provide for attorneys' fees).  Because no legal basis exists for the recovery of the punitive damages or attorneys' fees pled by Plaintiff in Count I, Defendant is accordingly entitled to summary judgment on these claims.

---

[7] Plaintiff does not even plead entitlement to punitive damages in Count II, the FCCPA count.

[8] The TCPA does contain a treble damages provision, where the court "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3). Subparagraph (B) allows a claimant to recover actual monetary loss from a violation, or to receive $500 in damages for each such violation, whichever is greater.  Therefore, the treble damages provision would cap damages at no more than three times $500 per violation.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof has been furnished via email to Michael J. Vitoria, Esq. at MVitoria@ForThePeople.com; and William Peerce Howard, Esq. at WPHPleadings@ForThePeople.com, on this 1st day of April, 2014.

KILLGORE, PEARLMAN, STAMP,
ORNSTEIN & SQUIRES, P.A.
2 South Orange Avenue, 5th Floor
Orlando, Florida 32801
Telephone:  (407) 425-1020
Facsimile:  (407) 839-3635


William J. Denius
Florida Bar No. 0093637
Counsel for Defendant
Primary:  wjdenius@kpsos.com
Secondary:  ldreyer@kpsos.com
Secondary:  litigation@kpsos.com