**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

WILLIE SMITH,

    Plaintiff,

v.                                                                                    Case No:   3:13-cv-933-J-32MCR

MARKONE FINANCIAL, LLC,

    Defendant.

## O R D E R

Willie Smith alleges that MarkOne Financial, LLC repeatedly called her cell phone in violation of the Telephone Consumer Protection Act ("TCPA") and the Florida Consumer Collection Practices Act ("FCCPA"). (Doc. 1). MarkOne moved to strike Plaintiff's expert's testimony and certain other evidence (Doc. 49), Smith responded (Doc. 60), and MarkOne replied (Doc. 71). MarkOne has now withdrawn part of the grounds for that motion. (Doc. 89). MarkOne also moved for summary judgment on both claims. (Doc. 68; Doc. 82). Smith responded (Doc. 72; Doc. 74; Doc. 76), and MarkOne replied (Doc. 85). The parties have filed a wealth of supporting documents, including notices of supplemental authority (Doc. 79; Doc. 80; Doc. 84), additional evidence (Doc. 95; Doc. 103; Doc. 110), and supplemental briefing (Doc. 106; Doc. 108; Doc. 114). Smith cross-moved for partial summary judgment (Doc. 113) and MarkOne responded (Doc. 115). On January 27, 2015, the Court heard oral argument on all pending motions, and the transcript of that proceeding is incorporated herein.

**I.      FACTS**

In late 2012, Kimberly Robinson purchased a white 2003 Mercedes Benz, indirectly financed by MarkOne. (Doc. 110-1 at 9). As part of obtaining financing, Robinson completed a MarkOne reference verification form, listing Pearl "Willie" Smith as her landlord and mother and providing Smith's cell phone number. (Doc. 74-2 at 3). The reference verification form notified Robinson that her references may be called prior to credit approval or "in the event of default or other need to make contact with [her] during the term of the account being open". (Doc. 74-2 at 3). Robinson also signed a consent form authorizing MarkOne to call her references. (Doc. 74-2 at 4). In conjunction with the same financing agreement, either a MarkOne employee or a car dealership employee spoke to Robinson and filled out a Verification Sheet and Customer Interview, each time listing Smith as Robinson's landlord and writing down Smith's cell phone number. (Doc. 74-2 at 1, 2; Doc. 74-9 at 46; Doc. 110-1 at 84-85).

After problems with Robinson's first payment, MarkOne began to call her references in an attempt to get ahold of her. (Doc. 74-4 at 4). Thereafter, MarkOne repeatedly called Smith's cell phone. (Doc. 74-7 at 27, 39). MarkOne admits that it made fifty-one phone calls to Smith's cell phone between November 7, 2012 and June 14, 2013 (Doc. 106 at 9 n.7), ten of which were made between March 14, 2013 and April 2, 2013 using a LiveVox system (Doc. 114 at 3).[1] Smith, however, asserts that

---

[1] MarkOne has provided a list of the dates and times of the calls made using the LiveVox system (Doc. 68-5 at 4) and the calls it admits to making using other means (Doc. 68-5 at 5). These lists include fifty-three calls, rather than fifty-one, because they include two calls made by Smith to MarkOne, namely the eleventh call on the LiveVox list and the forty-first call on the regular list.

MarkOne made between eighty-four and eighty-seven calls to her cell phone. (Doc. 108 at 3).[2]

On each of these phone calls, the caller would state their name, that they were calling from MarkOne, and that they were looking for Robinson in relation to a car. (Doc. 74-7 at 27, 39). MarkOne told Smith that she was a reference, and that they wanted to know where Robinson was, including whether Robinson was living with Smith. (Doc. 74-7 at 105). MarkOne never told Smith that she owed or was obligated to pay any money. (Doc. 74-7 at 25). However, because of MarkOne's persistent questioning, and her impression that MarkOne felt like she was hiding something for Robinson, Smith felt like she was obligated to pay the debt. (Doc. 74-7 at 103).

Smith testified that she told MarkOne to stop calling her on each and every phone call. (Doc. 74-7 at 99). On April 17, 2013, MarkOne's account notes state that Smith told MarkOne that she was not the borrower and demonstrated that she was upset by the call, eventually hanging up on MarkOne. (Doc. 74-4 at 42). The account notes state that the collector "removed the #". (Doc. 74-11 at 32). However, MarkOne admits that it called Smith at least six times after April 17, 2013. (Doc. 68-5 at 5).

## II.   MOTION TO STRIKE

MarkOne moved to strike as belatedly disclosed:

- Smith's Metro PCS phone records

---

[2] Smith initially testified that MarkOne called her at least two or three times a day, every other day from December 2012 to April or May 2013. (Doc. 74-7 at 58). However, she has now limited her allegations to eighty-four to eighty-seven calls from November 7, 2012 to June 14, 2013. (Doc. 108 at 3).

3

- Reports from the LiveVox system showing all calls from MarkOne to Smith's cell phone

- Plaintiff's Bates PLT000001 (Plaintiff's call log)

- That Plaintiff is seeking actual damages if greater than the statutory damages

- Metro PCS' records custodian, Angie Torrey

- Plaintiff's treating physician, Dr. Rohit

- Dr. Rohit's medical records for Plaintiff

- Smith's expert, Jeff Hansen

(Doc. 49).

MarkOne has withdrawn the motion as it pertains to the Metro PCS records (Doc. 89) and the reports from the LiveVox system (Doc. 71 at 4 n.4). Smith adequately disclosed her call log and that she was seeking actual damages if they were greater than the statutory damages. (Doc. 60-1). To the extent that she belatedly disclosed Torrey, Dr. Rohit, and her medical records, such late disclosure was harmless. The only remaining issue is whether the Court should strike Smith's expert, Jeff Hansen. Plaintiff informed the Court at oral argument that she only wants to use Hansen's testimony to demonstrate that MarkOne used an automatic telephone dialing system ("ATDS") to call her. As Smith is entitled to partial summary judgment on that issue even in the absence of Hansen's testimony, see infra Part III.A.1, she has no need of his testimony, and the motion is moot as it applies to him.

4

**III. MOTIONS FOR SUMMARY JUDGMENT**

**A. The TCPA claim**

The TCPA prohibits the use of an ATDS to call a telephone number assigned to a cellular telephone service without the prior express consent of the "called party", the current cell phone subscriber. 47 U.S.C. § 227(b)(1)(A) (2012); see Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1253 (11th Cir. 2014) (defining the called party as the current subscriber). MarkOne made at least ten calls to Smith using a Live Vox system between March 14, 2013 and April 2, 2013. (Doc. 74-1 at 1, 4).

**1. Whether the LiveVox System is an ATDS**

MarkOne argues that it is entitled to summary judgment on Smith's TCPA claim because it did not use an ATDS to call Smith. (Doc. 68 at 16). Smith cross-moved for partial summary judgment on whether the LiveVox system is an ATDS. (Doc. 113). An ATDS is "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." § 227(a)(1). When the TCPA was passed, telemarketers used dialing equipment to create and dial arbitrary 10-digit phone numbers. In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14092 (2003). Around the turn of the century, however, it became more cost effective for the teleservices industry to use lists of numbers. Id. The important factor, the capacity to dial numbers without human intervention, remained the same. Id.

In the face of these technological advances, the FCC considered the application of the TCPA's definition of an ATDS to what are called "predictive dialers". Id.

5

> "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."
>
> Id. at 14091 (2003).

The FCC has repeatedly found that a predictive dialer is an ATDS. Id. at 14091-93; see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 15391, 15399, n.5 (2012); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, 566 (2008). This Court is bound by the FCC's determination. Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1119 (11th Cir. 2014).

As it is undisputed that MarkOne called Smith using a LiveVox system, the Court only needs to determine whether that system is an ATDS. MarkOne argues that the absence of any evidence that the LiveVox system used a random or sequential number generator establishes that the system is not an ATDS. (Doc. 68 at 16). However, the FCC has ruled that a dialer need not have a random or sequential number generator to qualify as an ATDS. See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. at 14091-93 (finding that the TCPA was intended to protect against autodialed calls, including calls from a list of numbers).

MarkOne alternatively argues that the LiveVox system is not an ATDS because there is no evidence that it is hardware that, when paired with certain software, has the capacity to store or produce numbers and dial those numbers. (Doc. 115 at 4). In

6

other words, MarkOne argues that the LiveVox system is not a predictive dialer. Nikhilesh Nath, MarkOne's chief information officer, testified that MarkOne uploads a list of accounts, including telephone numbers, to the LiveVox system early every morning. (Doc. 74-13 at 17-19). The LiveVox system then dials the numbers in the order in which it was set to call them. (Doc. 74-13 at 24). In deciding when to call the next number, the system predicts when a collection agent will be available to pick up a call. (Doc. 74-13 at 27). As the LiveVox system automatically dials numbers from a downloaded list and predicts when a collection agent will be available to pick up the call, it is a predictive dialer and an ATDS.

### 2. Whether Smith Consented

MarkOne also asserts that it is entitled to summary judgment on the TCPA claim because Smith expressly consented to being called. (Doc. 68 at 13). Prior express consent is an affirmative defense to a TCPA claim. Murphy v. DCI Biologicals Orlando, LLC, 6:12-CV-1459-ORL, 2013 WL 6865772, at *4 (M.D. Fla. Dec. 31, 2013). That consent can, however, be revoked, either orally or in writing. Osorio, 746 F.3d at 1255. Disagreement over whether consent was orally revoked precludes summary judgment. Id. at 1256; Gray v. Morgan Drexen, Inc., 2:13-CV-83-FTM-29DNF, 2014 WL 2573227, at *3 (M.D. Fla. June 9, 2014).

On February 13, 2013, a MarkOne employee noted that Smith confirmed that Robinson lived at Smith's home, and agreed that Smith's cell phone number was a good number to reach Robinson. (Doc. 74-4 at 17). Smith testified both that she never said that (Doc. 74-7 at 106) and that she could not remember whether she said that or

7

not (Doc. 74-7 at 113). However, even if Smith made the statement and even if the statement constituted consent, MarkOne is still not entitled to summary judgment. Smith alleges that she told MarkOne to stop calling her every time that it called. (Doc. 74-7 at 99). Specifically, Smith noted in her call log that she told MarkOne to stop calling her on March 16 and April 1. (Doc. 74-5). Nevertheless, MarkOne continued to call her using the Live Vox system until April 2, 2013. (Doc. 68-5 at 4). Therefore, even assuming that Smith consented to MarkOne's calls on February 13, 2013, there is an issue of material fact as to whether and when she revoked that consent.

### 3. **Punitive Damages and Attorneys' Fees**

MarkOne moved for summary judgment on Smith's claim for punitive damages and attorneys' fees on her TCPA claim. (Doc. 68 at 23). Smith conceded in her response that she is not entitled to attorneys' fees on the TCPA claim. (Doc. 72 at 20). At oral argument, she also conceded that the TCPA does not provide for punitive damages. See Schreck v. NCO Financial Systems, Inc., 1:14-cv-432-CAP-JCF, Doc. 25 (N.D. Ga. Aug. 15, 2014).

### B. **The FCCPA claim**

Count Two alleges that MarkOne willfully communicated with Smith with such frequency as could reasonably be expected to harass her, or willfully engaged in other conduct which could reasonably be expected to harass her, in violation of Fla. Stat. § 559.72(7), and claimed, attempted, or threatened to enforce a debt, knowing that the debt is not legitimate, in violation of § 559.72(9). (Doc. 1 at 4).

8

### 1. **Whether Smith is a Debtor**

The FCCPA provides that a "debtor may bring a civil action against a person violating" the statute's provisions. Fla. Stat. § 559.77(1) (2014). Unless the context otherwise indicates, the FCCPA uses the word debtor to refer to "any natural person obligated or allegedly obligated to pay any debt." § 559.55(8). MarkOne argues that it is entitled to summary judgment on both parts of Smith's FCCPA claim because Smith is not a debtor as defined by the FCCPA, and therefore does not have standing to bring a claim under the statute. As the parties agree that Smith was not obligated to pay the debt, the only question before the Court is whether she was allegedly obligated to pay the debt.

In determining whether a plaintiff was allegedly obligated to pay a debt, the operative question is whether the defendant communicated to the plaintiff that she was obligated. Fini v. Dish Network L.L.C., 955 F. Supp. 2d 1288, 1298 (M.D. Fla. 2013). Thus, where a creditor calls the wrong number and alleges that the call recipient owes a debt, the recipient is a debtor under the FCCPA. See id.; Halsten v. Target Nat. Bank, No. 2:13-CV-287-FTM-38, 2013 WL 3804844, at *4 (M.D. Fla. July 19, 2013); Desmond v. Accounts Receivable Mgmt., Inc., 72 So. 3d 179, 181 (Fla. Dist. Ct. App. 2011); but see Condon v. Global Credit & Collection Corp., 8:10-CV-1526-T-TGW, 2010 WL 5071014, at *6 (M.D. Fla. Dec. 7, 2010) (granting summary judgment on FCCPA claim for lack of standing even though a reasonable factfinder could find that the creditor thought he was calling the debtor but mistakenly called the plaintiff). Where instead a creditor calls a debtor's family member to direct the debtor to return

9

the call, one court in this district found the family member lacked standing. Belin v. Litton Loan Servicing, LP, No. 8:06CV760 T24EAJ, 2006 WL 1992410, at *1 (M.D. Fla. July 14, 2006).

Smith admits that MarkOne never told her that she owed or was obligated to pay any money (Doc. 74-7 at 25), and that MarkOne indicated on each phone call that they were looking for Robinson (Doc. 74-7 at 27, 39). Nevertheless, Smith argues that MarkOne called her in the mistaken belief that she was Robinson, making this a mistaken identity case like Fini, 955 F. Supp. 2d 1288, or Desmond, 72 So. 3d 179. (Doc. 72 at 12).[3] In the mistaken identity cases, the debt collector stated or implied that the call recipient was obligated to pay the debt. See, e.g., Fini, 955 F. Supp. 2d at 1290 ("We have made several attempts to contact you regarding the payment of your account balance.") (emphasis added); Halsten, 2013 WL 3804844, at *4 (finding that the debt collectors implied that they believed plaintiff was lying and in fact was the party responsible for the debt). In contrast, MarkOne never stated that Smith was obligated to pay the debt. (Doc. 74-7 at 25). Each time MarkOne's collectors spoke to Smith, they stated that they were looking for Robinson, not Smith. (Doc. 74-7 at 27, 39). They either called Smith as a reference to get ahold of Robinson (Doc. 74-14 at 24-25, 26, 29, 30, 31, 34, 52; Doc. 74-16 at 32, 37; Doc. 74-17 at 13, 18, 21, 22, 26, 54; Doc.

---

[3] Smith also states that MarkOne made her feel like she was obligated to pay the debt. (Doc. 74-7 at 103). However, her feelings are not important to the resolution of this motion, as they do not indicate whether MarkOne alleged that Smith was obligated.

10

74-18 at 22), or called Smith's number in the belief that Robinson could also be reached at that number (Doc. 74-14 at 46; Doc. 74-17 at 24-25).

As MarkOne did not allege that Smith was obligated to pay the debt, Smith is not a debtor under the traditional FCCPA definition. Accordingly, she does not have standing to bring a claim under § 559.72(9). However, her claim under § 559.72(7) presents a peculiar case. The FCCPA prohibits a person from willfully communicating with a member of the debtor's family "with such frequency as can reasonably be expected to harass" the debtor's family and from willfully engaging in other conduct that can reasonably be expected to harass a member of the debtor's family. § 559.72(7). Reading the statute to always limit standing to debtors as defined under § 559.55(8) would effectively strike this prohibition from the statute. A debtor would arguably not have standing to bring a claim for injuries suffered by a family member because the debtor would not have suffered an actual injury.[4] Nor, under MarkOne's construction of the statute, does a family member have standing on their own to bring suit.

The FCCPA states that its definition of debtor only applies if the context of the statute does not dictate otherwise. § 559.55. While there is no case directly on point, the Court does not believe that the legislature intended to create a right without a remedy. § 559.77(1) provides that a "debtor" "may bring a civil action against a person violating the provisions of § 559.72", which includes § 559.72(7). The context of the statute therefore indicates that a "debtor" who may bring suit under § 559.77(1) is

---

[4] The parties disagreed with this contention at oral argument. However, in doing so, neither party described an actual injury the debtor would suffer in such a scenario.

defined to include both debtors as defined under § 559.55(8) and a family member who brings a claim under § 559.72(7). But see Belin, 2006 WL 1992410, at *7 (finding a debtor's family member lacked standing where a creditor called to ask them to direct the debtor to return the call). While the Court may revisit this unsettled issue at trial, for purposes of ruling on the motion for summary judgment, Smith has standing to bring her claim under § 559.72(7).

### 2. Whether MarkOne's Calls Were Reasonably Expected to Harass

MarkOne contends that, even if Smith has FCCPA standing, her claim under § 559.72(7) fails because MarkOne did not engage in sufficient communication or conduct as can reasonably be expected to harass. (Doc. 68 at 17-22). The FCCPA provides that no person shall "[w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." § 559.72(7). Whether communication was frequent enough to constitute harassment is generally a jury question. Story v. J. M. Fields, Inc., 343 So. 2d 675, 677 (Fla. Dist. Ct. App. 1977). Proof of frequent calls, continuing after the plaintiff told the defendant to stop calling, is sufficient to demonstrate a triable issue of fact. Id. at 677; see, e.g., Barnes v. Seterus, Inc., No. 13-81021-CV, 2013 WL 6834720, at *2 (S.D. Fla. Dec. 26, 2013); Scott v. Florida Health Sciences Ctr., Inc., No. 8:08-CV-1270-T-24EAJ, 2008 WL 4613083, at *4 (M.D. Fla. Oct. 16, 2008).

MarkOne relies entirely upon Fair Debt Collection Practice Act ("FDCPA") cases in making its argument for summary judgment. In construing FCCPA provisions, FDCPA cases are given great weight. § 559.77(5). The FDCPA prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d (2012). One court has held that as many as 100 calls in six months is insufficient to create a claim under § 1692d in the absence of additional misconduct. Stinson v. Receivables Mgmt. Bureau Inc., No. 2:12-CV-02558-AKK, 2013 WL 1278966, at *5-6 (N.D. Ala. Mar. 26, 2013).[5] However, additional misconduct includes calling the plaintiff after being asked to stop. Waite v. Fin. Recovery Servs., Inc., No. 8:09-CV-02336, 2010 WL 5209350, at *3 (M.D. Fla. Dec. 16, 2010); but see Saltzman v. I.C. Sys., Inc., No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) (finding no issue of fact on an FDCPA claim despite the defendant's numerous calls to the plaintiff and the plaintiff's alleged request for the calls to stop).

Here, MarkOne made between fifty-one and eighty-seven calls to Smith in the course of eight months. Smith testified that she told MarkOne to stop calling her on each and every one of those calls.[6] MarkOne's April 17, 2013 account notes also show that Smith told MarkOne that she was not the borrower and expressed displeasure at

---

[5] The Court does not necessarily embrace this decision, but other courts have also held that a large number of calls, without more, is insufficient to create FDCPA liability.

[6] Unlike in Barnes, Smith did not send a letter to MarkOne requesting it stop calling her. While a written letter would provide additional evidence of harassment, the absence of such a letter is not decisive.

13

the calls. (Doc. 74-4 at 42). Yet, MarkOne continued to call her after April 17, 2013. (Doc. 68-5 at 5). Taking these facts as true for the purposes of this motion, there is an issue of material fact as to whether MarkOne's calls could reasonably be expected to harass Smith.

### 3. Whether MarkOne Was Trying to Enforce a Debt

Smith also alleges in Count Two that MarkOne claimed, attempted or threatened to enforce a debt that it knew was not legitimate, in violation of § 559.72(9). (Doc. 1 at 4). MarkOne seeks summary judgment on this part of Count Two, as it asserts that it never claimed, attempted, or threatened to enforce a debt against Smith. (Doc. 68 at 22). In response, Smith argues that MarkOne made her feel like she was responsible for the debt. (Doc. 72 at 15).

Smith lacks standing to bring a claim under § 559.72(9). See supra Part III.B.1. Moreover, even if Smith had standing, MarkOne would be entitled to summary judgment on Smith's claim under § 559.72(9) because it is undisputed that MarkOne never claimed, attempted, or threatened to enforce a debt against Smith. (Doc. 74-7 at 25).

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion to Strike (Doc. 49) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. 68) is **DENIED**, except as to Plaintiff's claim under § 559.72(9) in Count Two. Plaintiff's request for attorneys' fees and punitive damages under Count One are **STRICKEN**.

3. Plaintiff's Motion for Partial Summary Judgment (Doc. 113) is **GRANTED**. Defendant's LiveVox Predictive Dialer is an ATDS as defined under the TCPA.

4. This case is referred to the Honorable Monte C. Richardson for a settlement conference. The parties should contact Judge Richardson's chambers (904-301-6740) to schedule the settlement conference. If settlement efforts fail, upon notification by the parties, the Court will set the case for pre-trial conference and trial.

5. The Clerk should administratively close the file until further Order.

**DONE AND ORDERED** in Jacksonville, Florida the 2nd day of February, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

w.
Copies to:

Honorable Monte C. Richardson
United States Magistrate Judge

Counsel of record